JUSTICE RICE,
concurring in part and dissenting in part.
¶47 I concur with the Court’s resolution of Issues 1, 3 and 4, but dissent from the resolution of Issue 2.
¶48 I believe that all of the administrative rules which set penalty floors are defective for the same reason-they are in conflict with the statute. Although the Court relies on Reier’s application of these provisions, the Reier Court was careful to note that the employer there “[did] not dispute, in any of its briefing, the validity ... of the *421 administrative rules ....’’Reier, ¶ 30. Here, the City of Billings does so. ¶49 Section 39-3-206, MCA, provides, in pertinent part, that:
(1) An employer who fails to pay an employee as provided in this part or who violates any other provision of this part is guilty of a misdemeanor. A penalty must also be assessed against and paid by the employer to the employee in an amount not to exceed 110% of the wages due and unpaid. [Emphasis added.]
Clearly, the statute requires a penalty, but does not limit the penalty to be imposed to a few mandatory floors. Instead, it sets a wide range between near zero up to 110 percent. Neither does the statute’s rulemaking authority delegate to the Department the duty of designating the penalty level(s). Rather, the broad penalty range is to be applied discretionarily in each wage collection proceeding. The Department’s penalty floors are mandatory (“[t]he maximum penalty is mandatory under the above circumstances ....” Admin. R. M. 24.16.7556(3); “a penalty equal to 55% ... will be imposed ....” Admin. R. M. 24.16.7566(l)(a); “the department will impose the maximum penalty allowed by law.” Admin. R. M. 24.16.7566(2)) and arbitrary, eliminating the exercise of any discretion by the court or decisionmaker, as well as the freedom to weigh the significance of the violation under the circumstances of each case.
¶50 The Court concludes in ¶ 29 that “[e]stablishing a 15 percent or 55 percent penalty does not add another requirement. Rather, it sets a minimum within the range acceptable to the legislature.” The flaw in this reasoning can readily be seen-it would likewise allow the Department to require a 110 percent penalty in all cases, because such a rule would be within the range “acceptable to the legislature.” To the contrary, this Court has held that regulations are “out of harmony” with statute if “they engraft additional, noncontradictory requirements on the statute which were not envisioned by the legislature.” Board of Barbers, Etc. v. Big Sky College, Etc., 192 Mont. 159, 161, 626 P.2d 1269, 1270 (1981) (citation omitted). Thus, a regulation may be within statutory parameters, yet invalid as imposing additional, unforeseen restrictions. In Board of Barbers, the relevant statute stated as follows:
“On completion of 1 year of apprenticeship under the immediate personal supervision of a licensed barber, an apprentice must apply to the department to take the examination for a barber’s certificate of registration.”
Board of Barbers, 192 Mont. at 160, 626 P.2d at 1270 (quoting § 37-30-305, MCA). Pursuant thereto, the Board of Barbers adopted this rule:
Every apprentice must serve one normal work year, or its equivalent at the discretion of the board, as an apprentice before *422 he can take the barber examination.
Board of Barbers, 192 Mont. at 160, 626 P.2d at 1270. In turn, the Board defined “normal work year” as one served in a commercial barber shop only. Board of Barbers, 192 Mont. at 162, 626 P.2d at 1271. The Court struck down the rule, concluding:
[T]he statute simply requires a year’s apprenticeship served “under the immediate personal supervision of a licensed barber.” Thus the Board’s rule engrafts an additional requirement on apprenticeship not contained in the statute. In our view, this additional requirement that apprenticeship be served in a commercial barbershop does not satisfy the test of “reasonable necessity to effectuate the purpose of the statute,” section 2-4-305(5), MCA, viz. requiring a period of training prior to qualifying for examination and licensing as a barber. It engrafts additional, noncontradictory requirements on apprenticeship prohibited by Bell and Michels. We hold the rule as interpreted by the Board invalid.
Board of Barbers, 192 Mont. at 162, 626 P.2d at 1271 (emphasis added).
¶51 By requiring that all employers violating the wage statute be assessed one of three arbitrary penalties, the Department has both added requirements and narrowed the statute’s application, thus “exceeding] the authority provided by statute....” Taylor v. Taylor, 272 Mont. 30, 36, 899 P.2d 523, 526 (1995). The penalty rules force the Department and the courts to hammer inevitably “square peg” fact patterns into one of three “round hole” penalty levels, despite legislative authority to the contrary. Likewise, the rule violates § 2-4-305(6)(b), MCA, because the arbitrary penalties cannot be said to be “reasonably necessary to effectuate the purpose of the statute.” If anything, the rules constrict the statute’s intended effect and make it more difficult to effectuate the statute.
¶52 I agree with the District Court’s conclusion that, to the extent the Commissioner or the Department has fixed penalties, “they have exceeded their authority.... Only the legislature can set the minimum penalty; the legislature ... has not delegated this authority.” While the Department may well be able to issue guidelines for penalty assessments under the statute, it cannot set arbitrary penalty levels.
¶53 I would affirm on Issue 2.
CHIEF JUSTICE GRAY and JUSTICE WARNER join the concurring and dissenting opinion of JUSTICE RICE.